Ernest Ellison Auditor General Tallahassee
QUESTIONS:
1. With reference to fraternal, social, professional, or public officer organizations or groups of a similar nature, when, if ever, is a public officer authorized to expend public funds for purpose of appearing before such groups to make a speech or presentation which provides the audience with informational or educational material concerning the duties or functions of the officer; to make a speech or presentation or participate in a panel discussion which is intended to promote or influence the thinking of the group as to a particular idea or point of view, as contrasted to merely informing or educating; or to accept a personal award from the group?
2. When, if ever, is a public officer authorized to expend the public funds of his office for the purpose of appearing before the news media to present informational material concerning the duties or functions of his office or to make a speech or presentation or participate in a panel discussion which is intended to promote or advocate a particular idea or point of view, as contrasted to merely informing or educating?
3. Would any response to the issues raised in questions 1 and 2 be different as to the Governor and members of the Cabinet as opposed to public officers generally in light of the `penumbra of office' theory espoused in AGO 071-200?
4. In addition to the general conclusionary allegation of ultimate law and fact contained in a voucher such as one for travel expense reimbursement asserting that the travel was for a public purpose of the office, what particular references to authorizing law and what detail in the nature of specific supporting facts must be supplied by the claimant, either in the voucher or supplementary thereto, or both, in order to satisfy the requirement as to the manner in which an officer issuing a voucher for payment is obligated to cast the same indicting the legality of such payments (in accordance with principles announced, inter alia, in AGO's 076-191, 075-299, and 068-12)?
SUMMARY:
Expenditures must be examined, and their legality determined, on a case-by-case basis. The determinative factors are the identity of the officer in question, the nature and scope of the particular duties and functions imposed by law upon that officer (both express and necessarily implied), and the purpose of the travel as detailed on the travel voucher and related forms. An officer's travel expenses may be paid from public funds only when the travel is for a public purpose authorized by law to be performed by the agency or official in question, is necessary for the conduct of official business of the state, and is necessary for the performance of the officer's official duties. The Governor and members of the Cabinet are subject to the same rules of law as are other officers regarding expenditure of public funds for travel and other purposes. The Governor's contingent-discretionary appropriation and the authority to expend funds from that appropriation as set out in s. 216.231(2), F. S., apply only to the Governor. The particular detail in which a travel expense claim must be worded is a matter to be determined by the Auditor General, and the Comptroller and Department of Banking and Finance, subject to statutory requirements that sufficient information be provided so as to enable the Auditor General to determine the legality of the expenses.
The above questions have arisen in connection with travel expenses of public officers relating to the activities delineated in the above questions.
AS TO QUESTION 1:
The lawful incurring of travel expenses for the purpose of providing educational or informational material to groups such as you listed is a matter which can only be determined on a case-by-case basis, by examining the nature and scope of the specific statutory (or, where applicable, constitutional) powers, duties, and functions of the particular officer whose expenditures are being questioned. As has been previously pointed out in the opinions of this office, of which you are aware and which you cited and discussed in detail in your letter, the propriety of a particular expenditure of public funds must be examined in light of the statutorily prescribed express and necessarily implied duties, authority, and functions of the officer in question. That is, as was stated in AGO 078-101:
 In considering a question involving the expenditure of public funds by a public officer, it is necessary to determine whether the officer in question has been expressly authorized by statute to expend funds for the purpose under consideration, or must be considered to have been given such authority by necessary implication in order to carry out some duty or function expressly imposed or authorized by statute. . . .
As your question involves public officers in general, I can only reiterate that the above-quoted standard should be applied in the context of each case in order to determine whether the particular expenditure was lawful. However, I must also emphasize that the travel expense law, s. 112.061(3)(a) and (b), F. S. (1978 Supp.), limits reimbursement to expenses `necessarily incurred' in the conduct of `official business of the state' and in the performance of a `public purpose authorized by law to be performed by theagency.' (Emphasis supplied.) See also s. 112.061(10), prohibiting and punishing the submission of fraudulent travel expense claims and requiring a claim for reimbursement under s. 112.061 to contain a verified statement that `the expenses were actually incurred by the traveler as necessary traveling expenses in theperformance of his official duties . . . .' (Emphasis supplied.)And see s. 112.061(11)(b), requiring the Department of Banking and Finance to furnish a uniform travel voucher form which shall be used by all state officers when submitting travel expense statements for approval and payment, and which must include provision for certification or affirmation by the traveler that the expenses claimed were incurred, inter alia, `as necessary in the performance of official duties . . . .' It would seem that, by applying these clear provisions of the travel statute, along with the rules of law which have been set forth in opinions issued by this office many times in the past, to a particular voucher and to the particular express and necessarily implied authority, duties, and functions imposed by law upon the officer in question, you should be able in each case to readily determine whether a particular travel expenditure was lawful.
I must also point out that, as to state officers, there are two stages at which claims for travel expenses are examined and approved prior to their payment and prior to your postaudit review. First, there is the requirement in s. 112.061(3)(a), F. S. (1978 Supp.), that `[a]ll travel must be authorized and approved by the head of the agency, or his designated representative, from whose funds the traveler is paid.' It is clearly implicit in this requirement that the agency head or designee has the initial and mandatory duty of determining that the travel is necessary for a public purpose authorized by law to be performed by the particular agency (s. 112.061[3][b]) and that it is necessary in order for the traveler to carry out his official duties and the official business of the state. It is to be presumed that such approval will not be given in a perfunctory manner and that it will reflect the agency head's special knowledge of the authority and official duties imposed by law upon his agency and of what is necessary to carry out such prescribed duties and functions of that agency.
The next stage at which the propriety of a state officer's claim for travel expenses is to be reviewed and verified is when the voucher is presented to the Department of Banking and Finance for its payment approval and for issuance of a warrant. At this point, the department's (and the Comptroller's) preauditing powers and duties — both specifically as to travel expenses pursuant to the various provisions of s. 112.061, F. S., and generally, pursuant to the provisions of ch. 17, F. S. — become applicable. I must assume that travel vouchers are closely examined pursuant to these duties to determine the purpose of the travel and to determine, based on the identity of the traveler, whether the purpose is apublic purpose and is necessary in order for that traveler to carry out his official duties and the official business of thestate.
I have stated what may appear obvious only in order to emphasize that if the duties imposed by statute on travelers, on agency heads, and on the Department of Banking and Finance are being fully and properly complied with, then — in the absence of actual fraud, which is punishable as a criminal offense under s.112.061(10), F. S. (1978 Supp.), and which should be brought to the attention of the appropriate state attorney — it would seem that there should be little necessity for postaudit scrutiny of the purpose of the travel in question. Under such circumstances, it would appear that, by the time the (already paid) travel voucher is before you for examination (assuming previous compliance with statutory procedures and requirements by the traveler, agency head, and Department of Banking and Finance), the only matters necessary to be examined would be the truthfulness of the statement of the purpose of the travel, the identity of the parties whose signatures are affixed, and whether the amounts claimed were actually incurred. If this is not the case, and you feel that the built-in statutory safeguards and procedures are not being properly or fully complied with, and that reimbursement is being sought and obtained for unlawful purposes, I can only suggest that you contact the Department of Banking and Finance so that appropriate criteria and procedures may be implemented to assure that improper travel expense claims may be discovered prior to their audit and approval for payment. You may, of course, also report any such discrepancies to the appropriate legislative officers pursuant to s. 11.45(5) and (8), F. S., for appropriate legislative action or remedy, as the Legislature may deem necessary.
In this regard, I would add that the frequency with which questions in this area have been raised by your office and presented to this office indicates that it may be advisable for the Legislature to reexamine the statutory provisions for travel expense reimbursement, with particular emphasis on providing more explicit guidance to travelers, agency heads, and officers with preauditing and postauditing duties regarding travel for `educational' or `informational' purposes. Beyond what is stated herein and what has been stated in the prior opinions and letters of this office of which you are aware, we cannot assume either the preauditing function of the Department of Banking and Finance or the postauditing duties placed upon you as Auditor General. Accordingly, I am unable to provide you with a more explicit answer to this part of your first question. See previous opinions of this office, AGO's 077-8, 072-320, and 065-106. Those opinions, particularly AGO 077-8, discussed in detail the issues raised by the use of public funds to present only one side of a controversial issue (including the distinction between mere presentation of facts and the argument for or advocacy of one side) and it does not appear that further elaboration is necessary at this time.
I am aware of no circumstances — except where express authorization may exist by statute — under which public funds could properly be expended to reimburse a public officer for travel expenses incurred in accepting a personal award from a fraternal, social, professional, or public officer organization or group. While the presentation of information concerning an officer's official duties and functions may be authorized by law in some cases — and is, in fact, expressly authorized by statute in some cases, e.g., the various powers and duties of the Commissioner of Agriculture in s. 581.031(10), F. S. (1978 Supp.), as amended by Ch. 79-158, Laws of Florida, s. 570.07(20), F. S. (1978 Supp.), s. 500.22, F. S., and those of the Commissioner of Education in ss. 229.512(13), 229.55(2)(f), and 229.806, F. S. — I cannot conceive of any instance in which expenses incurred in accepting a personal award could properly be paid for from public funds. While the receipt of such a personal award by a public officer might be said to have some positive effect on the state in general or the agency with which the officer is connected, the primary benefit would necessarily be a personal and private benefit to the officer and any public benefit would be only incidental. It is fundamental that the constitutional requirement that public funds not be expended for private purposes necessitates that the reverse be true — that the public purpose or benefit be primary and any private benefit only incidental. Cf. O'Neill v. Burns,198 So.2d 1, 4 (Fla. 1967), as to the primary public purpose versus incidental public benefit doctrine.
AS TO QUESTION 2:
Both parts of this question raise the same issues as were raised in question 1. Accordingly, they may be answered by reference to the answers to your first question.
AS TO QUESTION 3:
Although your third question inquires whether the Governor and Cabinet are to be treated differently from other officers for purposes of travel expense reimbursement, I must assume that you are primarily concerned with members of the Cabinet, as questions involving the Governor must always take into consideration the contingent-discretionary appropriation provided annually in the General Appropriations Act and the spending authorization set forth in s. 216.231(2), F. S., providing:
 Notwithstanding any other provisions of law, moneys appropriated in any appropriations act for discretionary contingencies to the Governor may be expended at his discretion to promote general government and intergovernmental cooperation and to enhance the image of the state. All funds expended for such purposes shall be accounted for, and a report showing the amount expended, the names of the persons receiving same, and the purpose of each expenditure shall be annually reported to the Auditor General and the legislative appropriation committees.
See AGO's 071-116, and 077-11, delineating various uses of the contingent-discretionary funds by the Governor, including expenditures for certain travel (AGO 075-116) and transportation (AGO 077-11) expenses. It cannot be overemphasized that the contingentdiscretionary fund and the expenditures authorized in connection with that fund relate only to the Governor — not to any Cabinet member or to any other officer. As was stated in AGO 077-11:
 The extraordinary language of s. 216.231(2) — with its broad grant of discretion to the Governor, and reference to broadly definable purposes, such as `to promote general government' and `to enhance the image of the state' — is peculiar to the Governor and to the contingent discretionary fund and appears to have been intended to relieve the Governor from compliance with otherwise applicable state fiscal laws and standards governing expenditure of public funds. Of course, it is fundamental that not even statutory language such as that in s. 216.231(2) could authorize expenditure of public funds for other than a public purpose. Section 216.231(2), instead, broadens the scope of public purpose with respect to the Governor and commits to the discretion of the Governor (subject to audit by the Auditor General) the authority to determine those public purposes requiring expenditure of funds from the contingent-discretionary appropriation. (Emphasis supplied.)
As to Cabinet members, I am aware of no organic or statutory law or judicial ruling which distinguishes them from any other officers or classes of officers for the purpose of expenditure of public funds. A Cabinet member would certainly be expected to have duties which are both broader in scope and more numerous than those of other constitutional officer (e.g., property appraisers, sheriffs, and clerks of circuit court) with respect to whom most of the prior Attorney General Opinions and letters you cited were written, thus providing more instances in which a Cabinet member would be either expressly required or implicitly authorized to perform some function. Nevertheless, a Cabinet member is in the same position of having to point to some statutory (or constitutional) provision which either expressly imposes a duty or expressly or by necessary implication authorizes the performance of some function in order to lawfully expend public funds. This principle applies equally to the Governor, except when the funds in question are from the contingent-discretionary appropriation (see AGO's 071-28 and 071-160), and other constitutional officers such as judicial officers (see AGO's 076-56 and 074-132), state attorneys (see AGO's 072-386 and 072-248), and school officer (see
AGO 075-237).
At this point and in this context, it is necessary to consider the relevance of AGO 071-200, as you requested. That opinion was designated as `supplemental' to AGO 071-160 (which had detailed a number of uses for which moneys from the Governor's contingent-discretionary appropriation could be spent) and was limited to the sole issue of expenditure of funds by the Governor or a Cabinet member for membership in his respective regional or national association (e.g., the National Association of Attorneys General or the Southern Governors' Conference). Regardless of the correctness or legal efficacy of the views expressed in AGO 071-200 at the time it was rendered, that opinion has now been superseded and rendered meaningless as to Cabinet members by the subsequent enactment of s. 216.345, F. S., as amended by Ch. 79-190, Laws of Florida, which (except in the case of the Governor's use of funds from his contingent-discretionary appropriation) controls the use of state funds to pay membership dues to `professional and other organizations.' Section 216.345
limits such payments to instances in which such membership is `essential to the statutory duties and responsibilities of the state agency.' See AGO 077-115. Therefore, to the extent that AGO 071-200 addressed the expenditure of funds by Cabinet members (who have no appropriation equivalent to the Governor's contingent-discretionary appropriation and no extraordinary spending authority equivalent to that given the Governor by s.216.231, F. S.), or the expenditure by the Governor of funds other than from the contingent-discretionary appropriation, AGO 071-200 no longer has any field of operation, and it should not be relied upon or cited as support for any expenditures by a cabinet member for membership dues or for travel expenses or for any other purpose.
AS TO QUESTION 4:
Beyond what has been stated in the prior opinions to which you referred in your letter (AGO's 076-191, 075-299, and 068-12) and in AGO 078-97, to the effect that a payment voucher must be accompanied with information sufficient to enable those with preauditing and postauditing functions to determine that the travel or other expense sought to be incurred is for an authorized purpose, I cannot appropriately answer this question. The specific manner in which a voucher must be drawn is a matter within your statutory powers as Auditor General and those of the Comptroller and Department of Banking and Finance, including the authority of the Department of Banking and Finance to promulgate administrative rules regarding travel expenses, pursuant to s. 112.061(9)(a), F. S. (1978 Supp.). As to your duties and your need for information adequate to enable you to perform postaudits and performance audits, I would particularly point out s. 11.47(1), (3), and (4), F. S., requiring that sufficient information be provided by the various officers subject to audit and providing penalties for failure to comply with this requirement. Section 11.47(1) provides:
 All officers whose respective offices the Auditor General is authorized to audit shall enter into their public records sufficient information for his proper audit, and shall make the same available to him on his demand.
One of the questions presented in AGO 078-97 involved the proper documentation required to justify the expenditures there at issue. In the answer to the second question in AGO 078-97, s. 11.47(1) was set out with the following comments, which I find to be equally applicable now and dispositive of your fourth question:
 This section, while requiring that `sufficient information' be entered in the public records for a proper audit, does not prescribe any particular form or manner of documentation to meet the statutory requirements and this office lacks the authority to specify what the requisite documentation or form thereof should be. However, because the information must be `sufficient' for your audit, and in view of the purposes of a postaudit and the rules of law governing the expenditure of public funds discussed in the response to your first question, it is my opinion that the officer must document in and by such public records the express statutory authority for any such expenditure or, if authority must be necessarily implied, he must document in and by such records both a statutorily authorized or required duty or function and the reason performance thereof necessarily requires the expenditure in order to carry out the expressly imposed duty or authorized function. In sum, the language of any such documentation or public records must be fully sufficient to demonstrate to the postauditor and the public the legality of such expenditures. The information or documentation provided by an officer should be adequate and explicit to permit the preauditor, if any, and the postauditor to determine whether the payment or expenditure is authorized by law. Cf. AGO's 075-299, 071-28, and 068-12, the reasoning of which and the grounds on which the pertinent conclusions are drawn therein apply with equal force and effect to the instant question.
In summary, the expenditures you have asked about must be examined, and their legality determined, on a case-by-case basis. The determinative factors are the identity of the officer in question, the nature and scope of the particular duties and functions imposed by law upon that officer (both express and necessarily implied), and the purpose of the travel as detailed on the travel voucher and related forms. An officer's travel expenses may be paid from public funds only when the travel is for a public purpose authorized by law to be performed by the agency or official in question, is necessary for the conduct of official business of the state, and is necessary for the performance of the officer's official duties. The Governor and members of the Cabinet are subject to the same rules of law as are other officers regarding expenditure of public funds for travel and other purposes. The Governor's contingent-discretionary appropriation and the authority to expend funds from that appropriation as set out in s. 216.231(2), F. S., apply only to the Governor. The particular detail in which a travel expense claim must be worded is a matter to be determined by the Auditor General, and the Comptroller and Department of Banking and Finance, subject to statutory requirements that sufficient information be provided so as to enable the Auditor General to determine the legality of the expenses.
Prepared by:
Jerald S. Price Assistant Attorney General